# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

TARA MARTIN ROWELL, individually and §
as the Representative of SCYLLA MALTESE §
§ Civil Action No. 4:18-CV-00351
§ Judge Mazzant
v. §
§
PAT BULLARD, §
§

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Tara Rowell's ("Rowell") Motion to Remand and Request for Attorney's Fees (Dkt. #7). Having considered the relevant pleadings, the Court finds that Rowell's motion should be denied.

## BACKGROUND

This case concerns an agreement to own and breed purebred dogs. Rowell manages Scylla Maltese—a purebred dog breeding program and valuable bloodline of show dogs. In spring 2011, Rowell sold one Scylla Maltese puppy as a pet to Defendant Pat Bullard ("Bullard"). Rowell told Bullard that she could only buy the puppy if Rowell remained its co-owner "in order to protect the Scylla Maltese bloodline." (Dkt. #2, Exhibit 2 at p. 4). The puppy proved to be show-quality and Bullard showed him. Rowell later sold another show-quality dog ("Taylor") to Bullard that Rowell and Bullard also co-owned to protect the Scylla Maltese bloodline. Bullard later tried to buy a female of the same breed ("Lili") from a German breeder. The breeder, however, knew about the Scylla Maltese bloodline and would not sell to Bullard unless Rowell was Lili's contractual co-owner. Bullard agreed. Thereafter, Bullard bred Lili twice—first with one of Rowell's stud dogs ("Tommy"), birthing Marilyn and James, and then with Taylor. Bullard, however, had to receive permission from Rowell to breed Lili with Taylor and Rowell claims that Lili's second

gestation period shows that she bred with Taylor before Rowell acquiesced. This allegedly illicit union yielded five puppies[1] ("Taylor's and Lili's puppies") (Dkt. #2, Exhibit 2 at p. 3). Rowell claims that Bullard is trying to breed and sell Taylor's and Lili's puppies, breed more puppies, and use the Scylla Maltese brand to her benefit.

On May 10, 2018, Rowell filed her amended original petition in Texas state court, seeking promissory estoppel, breach of contract, breach of fiduciary duty, a temporary restraining order, and attorneys' fees "at all levels of the legal process. . . ." (Dkt. #2, Exhibit 2 at p. 9). Rowell's claims concerned ten dogs—Cooper[2], Marilyn, James, and the seven dogs[3] (Dkt. #2, Exhibit 2 at p. 5). On May 11, 2018, Bullard removed the case to federal court on the basis of diversity jurisdiction (Dkt. #1). On May 23, 2018, Rowell filed her Motion to Remand and Request for Attorneys' Fees (Dkt. #7). On June 6, 2018, Bullard filed her response (Dkt. #12).

## LEGAL STANDARD

Defendant seeks to retain this case in federal court. A defendant may remove any civil action from state court to a district court of the United States which has original jurisdiction. 28 U.S.C. § 1441. District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Defendant has the burden of proving the jurisdictional amount when opposing a plaintiff's motion to remand. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir. 1995). Any ambiguities are resolved against removal because the removal statute is strictly construed in favor of remand. *See Bosky v. Kroger Tex., LP.*, 288 F.3d 208, 211

---

[1] The Court collectively refers to Lili, Taylor, and Lili's and Taylor's puppies as the "seven dogs."
[2] Via affidavit, Bullard declares that Rowell and Bullard initially co-owned Cooper—a seven-year-old American Kennel Club Grand Champion (Dkt. #12, Exhibit 5 at p. 3). Bullard further claims that, as required by their "purchase contract," Bullard had Cooper neutered so that she could become his sole owner and was his sole owner at the time of suit (Dkt. #12, Exhibit 5 at p. 3).
[3] The Court collectively refers to Cooper, Marilyn, James, and the seven dogs as the "ten dogs."

(5th Cir. 2002). "[Plaintiff's] claim remains presumptively correct unless [Defendant] can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *De Aguilar*, 47 F.3d at 1412. "The preponderance burden forces [Defendant] to do more than point to a state law that *might* allow [Plaintiff] to recover more than what is pled." *Id*. "[Defendant] must produce evidence that establishes that the actual amount in controversy exceeds [$75,000]." *Id*. "[I]f [Defendant] can show that the amount in controversy actually exceeds the jurisdictional amount, [Plaintiff] must be able to show that, as a matter of law, it is certain that [it] will not be able to recover more than the damages for which [it] has prayed in the state court complaint." *Id.* An "absolute certainty in valuation of the right involved is not required, and a reasonable probability of an amount suffices if the amount can be ascertained pursuant to some realistic formula." *Dreyer v. Jalet*, 349 F. Supp. 452, 465 (S.D. Tex. 1972).

## ANALYSIS

Rowell argues that her amended original petition states that she "seeks monetary relief over [$50,000] but less than $74,000." (Dkt. #7 at p. 4) (citation omitted). Rowell stresses that her amended original petition seeks the aforementioned monetary relief as compensation for her ownership interest in the ten dogs *or* to "enjoin Bullard from using the Scylla Maltese brand and return of the seven dogs." (Dkt. #7 at p. 4). Rowell avers that Bullard misconstrues the amended original petition to obtain an amount in controversy over $75,000. Rowell claims that Bullard's appraisal of the dogs is conclusory and unsupported by evidence. After removal, Rowell also stipulated that she seeks "monetary relief from Defendant in this case in an amount less than $74,000, inclusive of attorney's fees." (Dkt. #10). Bullard counters that along with those for alleged breach of contract, Rowell's amended original petition demands damages for breach of fiduciary duty, temporary and permanent injunctive relief, and promissory estoppel

(Dkt. #12 at p. 5). Bullard submits that the evidence shows that these damages total "no less than $200,000." (Dkt. #12 at p. 6). Bullard further avers that Rowell's original petition and its cover sheet sought damages in excess of $200,000 but less than $1,000,000 (Dkt. #12 at p. 6). Bullard reiterates her claim that Rowell seeks damages for monetary and non-monetary relief and both of these inform the amount in controversy for the Court's remand analysis. Finally, Bullard asserts that the attorneys' fees that Rowell seeks place this matter's amount in controversy above the jurisdictional threshold.

When, as here, a complaint seeks unspecified damages[4], a defendant may prove that the amount in controversy meets the jurisdictional requirement "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'" *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (quoting *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995) (emphasis in original); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). "[T]he jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen*, 63 F.3d at 1335. "Litigants who want to prevent removal must file a binding stipulation or affidavit [explicitly limiting the amount in controversy below the jurisdictional threshold] with their complaints; once a defendant has removed the case . . . later filings [are] irrelevant." *De Aguilar*, 47 F.3d at 1412 (quotations and alterations omitted). "If a state statute[5] provides for attorney's fees, such fees are included as

---

[4] Rowell seeks "monetary relief over $50,000 but less than $74,000" and attorneys' fees or injunctive relief and attorneys' fees in the amended original petition (Dkt. #2, Exhibit 2 at p. 8). Accordingly, Rowell did not seek specific, numerical damages. *See Luckett*, 171 F.3d at 298.
[5] Rowell seeks attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code (Dkt. #2, Exhibit 2 at p. 8).

part of the amount in controversy." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "[C]ourts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions." *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547 (5th Cir. 1961). "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Id.* at 547–48.

In the amended original petition, Rowell seeks to enjoin Bullard from using the Scylla Maltese brand and return of the seven dogs or, alternatively, compensation for Rowell's ownership interest in "the dogs in question." (Dkt. #2, Exhibit 2 at p. 8). Unfortunately, the amended original petition does not provide any explanation of the value of Rowell's ownership interest as co-owner of the "the dogs in question" and Bullard does not remedy this in her notice of removal or any affidavits accompanying her response to Rowell's motion to remand (Dkt. #2, Exhibit 2 at p. 8). This ambiguity, however, does not affect the Court's remand analysis.[6]

Via affidavit, Bullard declares that she was involved with the sport of "purebred AKC (American Kennel Club) registered Maltese" from 1982 to 1991 and returned to the "sport of purebred dogs in 2011." (Dkt. #12, Exhibit 5 at p. 2). Bullard states that she was a member of the American Maltese Association—"a national organization of Maltese owners, breeders, and exhibitors"—and served as an elected member of its board of directors during her involvement in the sport from 1982 to 1991 (Dkt. #12, Exhibit 5 at p. 2). Bullard also claims that she is a "current member in good standing of the American Maltese Association. . . ." (Dkt. #12, Exhibit 5 at p. 2). Finally, Bullard states that she conducted market research of the value of dogs "comparable to the

---

[6] As the Court will show, even if it assigns no value to Rowell's ownership interest as co-owner of "the dogs in question," the cost of attorneys' fees "at all levels of the legal process" satisfies the amount in controversy requirement (Dkt. #2, Exhibit 2 at pp. 8–9).

[ten dogs]." (Dkt. #12, Exhibit 5 at p. 3). Having said all of this, Bullard appraises Cooper, Marilyn, and James at $14,700 and the seven dogs at $30,400, giving the ten dogs a value of $45,100 (Dkt. #12, Exhibit 5 at p. 3).

Also via affidavit, Bullard's attorney tallies Rowell's attorneys' fees to date at $8,750, the cost of trying this case at $60,000, and the price of appeal at $30,000 for a total cost of $98,750 (Dkt. #12, Exhibit 6 at pp. 5–6). Bullard's attorney comprehensively derives this attorneys' fee calculation from his own professional experience, Rowell's attorney's hourly rate of $250 per hour, as well as this case's issues and the demands of trying it (Dkt. #7, Exhibit 1 at p. 3; Dkt. #12, Exhibit 6 at pp. 2–7).

Rowell's desired injunctive relief—i.e. recovering the seven dogs, enjoining Bullard's use of the Scylla Maltese brand, and recouping her attorneys' fees—and alternative, monetary relief—i.e. recouping the value of her ownership interest as co-owner of "the dogs in question" and her attorneys' fees—each exceed the jurisdictional threshold (Dkt. #2, Exhibit 2 at p. 8). In the injunction scenario, the value of the seven dogs is $30,400 and the value of attorneys' fees is $98,750 based on the only available evidence, totaling an amount in controversy of $129,150.[7] As for the monetary-relief scenario, while the Court lacks adequate information to determine the value of Rowell's ownership interest as co-owner of "the dogs in question," the value of attorneys' fees is still $98,750 based on the only available evidence, totaling an amount in controversy of at least $98,750 (Dkt. #2, Exhibit 2 at p. 8). Accordingly, the Court finds that Bullard proved by a preponderance of the evidence that this case's amount in controversy exceeds $75,000.

---

[7] The Court assigns a monetary value to Rowell's desired injunctive relief by examining the value of the property at issue, i.e. the seven dogs. *See Waller*, 296 F.2d at 547–48. The Court only has Bullard's appraisal of the seven dogs for $30,400 to inform its evaluation of the injunctive relief that Rowell seeks and uses it for this section of the analysis.

Since Bullard proved that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence, Rowell must disprove Bullard's claimed amount in controversy with "reasonable probability . . . pursuant to some realistic formula." *Dreyer*, 349 F. Supp. at 465. As previously mentioned, Rowell filed a stipulation with the Court, claiming that she sought "monetary relief from Defendant in this case in an amount less than $74,000, inclusive of attorney's fees." (Dkt. #10). This stipulation, however, is irrelevant to this order's analysis since Rowell did not file it with her amended original petition but after removal. *See De Aguilar*, 47 F.3d at 1412. Since Rowell's stipulation is irrelevant, she cannot meet the burden for remand. Thus, the Court finds that this case meets the jurisdictional threshold by involving an amount in controversy over $75,000 and remand is improper.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Renewed Motion to Remand and Request for Attorney's Fees (Dkt. #7) is hereby **DENIED**.

**SIGNED this 12th day of July, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE